UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK F. G., Jr.,

                Plaintiff,

v.                                                           1:20-CV-0537
                                                             (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                 OF COUNSEL:

EMPIRE JUSTICE CENTER                                        CATHERINE CALLERY, ESQ.
  Counsel for Plaintiff
One West Main St., Ste. 200
Rochester, NY 14614

GRECO TRAPP, PLLC                                            JOSEPHINE GREGO, ESQ.
  Counsel for Plaintiff
1700 Rand Building
14 Lafayette Sq.
Buffalo, NY 14203

U.S. SOCIAL SECURITY ADMIN.                                  JUDITH COHEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 23.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

I.      **RELEVANT BACKGROUND**

     **A.      Factual Background**

Plaintiff was born in 1971.  (T. 100.)  He has at least a high school education.  (T. 237.)  Generally, Plaintiff's alleged disability consists of depression and traumatic brain injury ("TBI").  (T. 101.)  His alleged disability onset date is September 5, 2017.  (T. 100.)  His date last insured is March 31, 2023.  (T. 20.)  His past relevant work consists of office manager and employment clerk.  (T. 30.)

     **B.      Procedural History**

On October 5, 2017, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 100.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On October 21, 2019, Plaintiff appeared before the ALJ, Stephen Cordovani.  (T. 38-99.)  On November 22, 2019, ALJ Cordovani issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 15-37.)  On April 16, 2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

     **C.      The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 20-32.)  First, the ALJ found Plaintiff met the insured status requirements through March 31, 2023 and Plaintiff had not engaged in substantial

gainful activity since September 5, 2017.  (T. 20.)  Second, the ALJ found Plaintiff had the severe impairments of: major depressive disorder, severe with psychotic features; posttraumatic stress disorder ("PTSD"); headaches; bilateral knee impairment; osteoarthritis of the right hip; degenerative disc disease of the cervical spine; migraines; syncope; and alcohol use disorder.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 21.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> [Plaintiff] can occasionally kneel, squat, crouch, and crawl.  He cannot climb ladders, ropes, or scaffolds.  He cannot work around hazards such as loud noise, unprotected heights, or moving mechanical parts.  He can have no exposure to light in greater intensity than observed in normal office, retail, or daylight settings.  He can understand, remember, and carry out simple instructions and tasks.  He can have no supervisory duties, no independent decision-making or goal setting, no strict production quotes, and can tolerate minimal changes in work routine and processes.  He can maintain an ordinary routine and regular attendance.  He can have occasional interaction with supervisors and co-workers.  He can have no or only incidental interaction with the general public.  He cannot perform team or tandem work.  He will be off task less than 10% of the workday.

(T. 23-24.)[1]  Fifth, the ALJ determined Plaintiff was unable to perform his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 30-32.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

A.      Plaintiff's Arguments

Plaintiff makes three arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly evaluate the opinion evidence in determining the RFC.  (Dkt. No. 18 at 23-28.)  Second, Plaintiff argues the ALJ erred in evaluating Plaintiff's subjective complaints.  (*Id*. at 28-32.)  Third, and lastly, Plaintiff argues the ALJ's errors were not harmless.  (*Id*. at 32-34.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 21.)

B.      Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the physical RFC is supported by substantial evidence and the ALJ properly evaluated the opinion evidence.  (Dkt. No. 19 at 10-17.)  Second, Defendant argues the ALJ properly evaluated Plaintiff's subjective complaints.  (*Id*. at 17-19.)  Third, and lastly, Defendant argues the ALJ's decision is free of legal error.  (*Id*. at 20.)

III.   RELEVANT LEGAL STANDARD

A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.    **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.    Evaluation of Opinion Evidence

Plaintiff argues the ALJ failed to adequately explain his findings regarding medical opinion evidence in the record.  (Dkt. No. 25 at 25-28.)  Plaintiff argues the ALJ "refused to address" opinions provided by the Veteran's Administration ("VA") and improperly rejected a portion of the consultative examiner's opinion.  (*Id.*)

Under 20 C.F.R. § 404.1520c the ALJ must articulate how he or she considered certain factors in assessing medical opinions.  *See* 20 C.F.R. § 404.1520c(a)-(c).  The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors.  *Id.* § 404.1520c(c).  An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion but need not expound on the

remaining three.  *Id*. § 404.1520c(b).  The ALJ is tasked with analyzing medical opinions

at the source-level, meaning that the ALJ need not discuss each and every medical

opinion in the record, and may apply the factors holistically to a single medical source.

*Id*. § 404.1520c(b)(1).  These rules do not apply to the ALJ's analysis or consideration

of nonmedical sources.  *Id*. § 404.1520c(d).

Here, the record contains multiple statements from VA providers relating to

Plaintiff's ability to work.  (T. 326, 462, 472, 488, 687, 1291.)  The regulations provide

that decisions by other governmental agencies, including the VA, are inherently neither

valuable nor persuasive. *See* 20 C.F.R. §§ 404.1520b(c)(1); 404.1504.  Specifically, the

regulations state, "because the evidence listed in paragraphs (c)(1) through (c)(3) of this

section is inherently neither valuable nor persuasive to the issue of whether you are

disabled or blind under the Act, we will not provide any analysis about how we

considered such evidence in our determination or decision, even under § 404.1520c."

*Id*. § 404.1520b(c).  However, under 20 C.F.R. § 404.1504, an ALJ must "consider all of

the supporting evidence underlying the other governmental agency or nongovernmental

entity's decision that we receive as evidence in your claim in accordance with §

404.1513(a)(1) through (4)."   As stated by Plaintiff, although the ALJ was not required

to analyze disability and other benefits decisions made by the VA under 20 C.F.R. §

404.1520b(c), the ALJ was nonetheless required to consider the underlying evidence

provided by the VA in support of the agency's determination.  (Dkt. No. 18 at 25.)  For

the reasons outlined below, the ALJ properly considered the opinions and underlying

evidence provided by the VA.

The ALJ provided sufficient analysis of VA disability opinions and underlying evidence under the regulations.  In addressing the VA opinions, the ALJ properly concluded, "the record does contain multiple opinions on the ultimate issue reserved to the Commissioner and other opinions that are inherently neither valuable nor persuasive under the current rules for evaluating medical evidence and will therefore not be addressed."  (T. 28.)  Further, evidence provided by the VA did not contain additional specific functional limitations.

Plaintiff argues the ALJ failed to properly assess underlying notations provided by VA examiner, William Reynolds, Psychologist.  (Dkt. No. 18 at 26.)  Here, the records cited by Plaintiff in support of his argument do not contain additional functional limitations.  *See Christopher M. V. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01500, 2021 WL 804258, at *4 (W.D.N.Y. Mar. 3, 2021) (although ALJ properly assessed VA disability rating, the ALJ failed to discuss specific functional limitations included in report).  Dr. Reynolds completed a VA disability benefits questionnaire.  (T. 325-329.)  The doctor provided a disability determination, concluding Plaintiff had a "total occupational and social impairment."  (T. 326.)  However, Dr. Reynolds's notations did not provide any additional specific work-related functional limitations.  Although the ALJ did not specifically refer to Dr. Reynolds by name, the ALJ did not "completely ignore" the doctor's statement.  (T. 28.)  As outlined above, the ALJ considered the multiple opinions provided by VA providers regarding Plaintiff's ultimate disability status and concluded the statements were "neither valuable nor persuasive."  (*Id.*); 20 C.F.R. §§ 404.1520b(c)(1); 404.1504.  Therefore, the ALJ properly assessed Dr. Reynolds's statements of disability under 20 C.F.R. §§ 404.1520b(c)(1); 404.1504.  Further,

because the doctor's statements did not contain any additional specific functional limitations, the ALJ was not required to provide any additional analysis.

Similarly, the ALJ properly assessed the disability determination statement provided by Alice Barber, PA.  (T. 28, 465-472.)  PA Barber, a provider with the VA, evaluated Plaintiff regarding his headaches and ability to work.  When asked if Plaintiff's headache condition impacted his ability to work, PA Barber checked "yes."  (T. 472.) PA Barber wrote Plaintiff had to lie down until his symptoms resolved.  (*Id*.)  Although the ALJ did not specifically address PA Barber's notation that Plaintiff had to lie down due to headaches, the ALJ thoroughly discussed evidence regarding Plaintiff's headaches, including Plaintiff's testimony, objective medical evidence, and opinion evidence.  (T. 26-27, 2-30.)

In evaluating Plaintiff's "headaches, migraines, and history of syncope" the ALJ considered the evidence in the record.  (T. 26.)  The ALJ noted Plaintiff's testimony of daily headaches with no relief from medication.  (*Id*.)  However, the ALJ also considered Plaintiff's statements to his neurologist that he was skipping doses of medication, reports of good headache control, and admission that headaches might be due to lack of sleep and over-use of caffeine.  (*Id*.)  The ALJ considered Plaintiff's reports that he suffered a headache when he did not take his rescue medication on time and that medication was helpful if taken at the proper time.  (*Id*.)  The ALJ also considered evidence that headaches improved with reduced stress.  (*Id*.)  The ALJ therefore properly assessed evidence in the record concerning Plaintiff's headaches, provided limitations in the RFC, and substantial evidence supported the ALJ's limitations.  (T. 26-27.)

In sum, the ALJ properly assessed Dr. Reynolds's and PA Barber's disability statements, as well as other disability statements made by various providers with the VA.  Any error to specifically address PA Barber's statement that Plaintiff needed to lay down was harmless because the ALJ considered evidence in the record concerning Plaintiff's headaches and substantial evidence supported the ALJ's RFC limitations.

Next, Plaintiff argues the ALJ failed to properly assess the opinion of consultative examiner, John Miller, Ph.D.  (Dkt. No. 18 at 26.)  Specifically, Plaintiff argues the ALJ dismissed the doctor's opined marked limitations "without citation to the record."  (*Id*.) Plaintiff further argues the ALJ overly relied on Plaintiff's alleged social activities to reject the marked limitations.  (Dkt. No. 18 at 26-27, Dkt. No. 21 at 5.)  Plaintiff's argument fails.

Based on his examination of Plaintiff, Dr. Miller opined Plaintiff was markedly limited in his ability to regulate emotions, control behavior, and maintain his well-being. (T. 413.)  The doctor opined Plaintiff was moderately limited in his ability to interact adequately with supervisors, coworkers, and the public, and sustain an ordinary routine and regular attendance at work.  (*Id*.)  Dr. Miller opined Plaintiff had no limitations in his ability to: understand, remember, or apply simple directions and instructions; understand remember or apply complex directions or instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions.  (*Id*.)

The ALJ found Dr. Miller's opinion to be "generally persuasive."  (T. 28-29.)  The ALJ concluded Dr. Miller's examination, which consisted of mostly normal mental status

findings, and the doctor's ultimate conclusion that Plaintiff's cognitive problems did not appear significant enough to interfere with Plaintiff's ability to function, supported his findings.  (T. 29.)  The ALJ also took into consideration that Dr. Miller personally examined Plaintiff and had "general program knowledge."  (*Id*.)  The ALJ concluded the doctor's opinion was consistent with, and endorsed by, non-examining State agency medical examiner, Dr. Bruni.  (*Id*.)  Lastly, the ALJ concluded the opined limitations were consistent with Plaintiff's activities of daily living.  (*Id*.)

First, contrary to Plaintiff's assertion, the ALJ provided specific citation to the record to support his determination that the doctor's opined marked limitations were not supported by evidence in the record.  The ALJ noted although Plaintiff "at times had poor judgement and conflict with others, he has also had fair or good insight and judgment and ability to use various coping mechanisms to manage his emotions."  (T. 29.)  In support of his determination the ALJ cited specific records.  (*Id*.)  For example, the ALJ cited evidence in the record where Plaintiff admitted to making threatening statements to a worker.  (T. 29, 422.)  Plaintiff informed a provider that the statements were made out of anger, the provider observed Plaintiff was calm and cooperative, and Plaintiff reported coping with close supports and walking his dog.  (T. 29, 422.)  The ALJ cited evidence that Plaintiff was able to travel with Wounded Warriors which he was looking forward to as a means to "heal and connect."  (T. 501.)  In addition, the ALJ cited objective mental status examination results describing Plaintiff's activities of daily living ("ADLs") as "good," his presentation as calm, and insight and judgment fair.  (T. 29, 987, 991.)  Therefore, contrary to Plaintiff's assertion, the ALJ cited specific

evidence in the record to support his determination that although Plaintiff had at times poor judgment and conflict, evidence did not support Dr. Miller's marked limitations.

Second, the ALJ did not "overly rely" on Plaintiff's activities of daily living in assessing Dr. Miller's limitations.  (Dkt. No. 18 at 26-27, Dkt. No. 21 at 5.)  The ALJ properly considered Plaintiff's activities as one factor in his overall assessment of the persuasiveness of the doctor's opinion.  *Gentles v. Comm's Soc. Sec.*, 848 F. App'x 56 (2d Cir. 2021) (ALJ properly assigned doctor's opinion limited weight, considering, among other factors, plaintiff's own reports of her activities of daily living did not support the doctor's opinion).  Further, the ALJ did not conclude Plaintiff's activities equated to the ability to perform the basic mental requirements of work.  Here, the ALJ concluded Dr. Miller's marked limitations were inconsistent with Plaintiff's ability to "engage in social activities such as travel, attendance at church, and attending an Irish festival."  (T. 29.)  Therefore, the ALJ's provided sufficient analysis to support his determination to not adopt Dr. Miller's marked limitations and substantial evidence supported the ALJ's decision.

Plaintiff cites to evidence in the record which he asserts supports his argument and greater functional limitations.  (Dkt. No. 18 at 32-34.)  Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Plaintiff must

show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Overall, in formulating Plaintiff's mental RFC, the ALJ properly assessed the medical opinion and other evidence in the record.

### B.      Evaluation of Symptoms, Including Pain

Plaintiff argues, in assessing his subjective statements, the ALJ "cherry picked" Plaintiff's activities of daily living, failed to properly assess his non-compliance with treatment, and over-emphasized Plaintiff's alcohol use.  (Dkt. No. 18 at 28-32.)

The ALJ must employ a two-step analysis to evaluate plaintiff's reported symptoms.  *See* 20 C.F.R. § 404.1529.  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. § 404.1529(b).  Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment Plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that Plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii). Here, the ALJ concluded Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were "inconsistent with the evidence because pursuant to 16-3p, and in consideration of the objective medical evidence which can reasonably produce the alleged symptoms, such as pain, [Plaintiff's] alleged daily activities during the closed period at issue are not entirely consistent with [Plaintiff's] allegations of disabling physical and mental symptoms and limitations."  (T. 25.)

As an initial matter, the ALJ's determination is, on its face, factually erroneous. First, the case before the ALJ did not concern a "closed period."  (T. 25.)  Second, the ALJ refers solely to Plaintiff's "daily activities" in his determination.  (*Id*.)  However, for the reasons outlined below, the ALJ's errors are harmless.

The ALJ's adherence to the regulations is clear and his reasoning can be gleaned from the record; therefore, any error in his evaluation statement was harmless. *See Halloran v. Barnhart,* 362 F.3d 28, 31-32 (2d Cir. 2004) (the courts require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear); *see Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013)

14

(considering ALJ considered all of the claimant's medically determinable impairments and applied the proper legal standard he need not recite every piece of evidence that contributed to the decision, so long as the record "permits [the court] to glean the rationale of an ALJ's decision") (internal citations omitted).

In his decision, the ALJ properly summarized Plaintiff's testimony regarding the limiting effects of his impairments.  (T. 24.)  The ALJ considered Plaintiff's statements regarding treatment including mental health therapy and medication.  (T. 24-25.)  The ALJ further considered Plaintiff's testimony regarding suicide attempts.  (T. 25.)  The ALJ noted Plaintiff's testimony concerning symptoms from headaches, knee injuries, and neck injury.  (T. 25-26.)  The ALJ outlined Plaintiff's testimony regarding his activities.  (*Id*.)  The ALJ went on to discuss objective and medical opinion evidence in the record.  (T. 26-30.)

Plaintiff argues the ALJ impermissibly "cherry picked" his activities of daily living overemphasizing working out and alcohol consumption.  (Dkt. No. 18 at 29.)  In assessing Plaintiff's subjective complaints concerning "orthopedic conditions," the ALJ concluded Plaintiff's complaints were inconsistent with the ability to perform activities of daily living such as performing personal care, driving, caring for dogs, taking vacations, attending festivals, shopping, doing yard work and some housework, going to the gym, and exercising.  (T. 25-26.)  In support of his conclusion the ALJ cited specific evidence in the record.  (T. 25.)  Contrary to Plaintiff's assertion, a review of the record and the ALJ's decision indicates the ALJ properly assessed Plaintiff's activities.

Indeed, as cited by the ALJ, Plaintiff attended an Irish festival (T. 320, 506), planned to travel to West Virginia (T. 321, 506), and was "exercising regularly" (T. 321,

506).  Plaintiff reported to Dr. Miller he drove himself to the evaluation (T. 410), he

abused alcohol from 2015 through 2016 (T. 411), he was independent in caring for

himself (T. 412), he could cook, prepare food, clean, do laundry, drive, and manage his

own money (T. 413).  Plaintiff informed a provider at the VA he grocery shopped, talked

to a friend, and cleaned.  (T. 503.)  Plaintiff reported to a VA provider he tolerated his

medication with no side effects and was able to drive to his appointment.  (T. 696.)

    Plaintiff asserts "several" of the ALJ's citation do not indicate gym activity.  (Dkt.

No. 18 at 29.)  Plaintiff's argument fails because Plaintiff relies on a narrow reading of

the ALJ's decision.  The ALJ concluded, in part, Plaintiff's subjective complaints of

orthopedic impairments was not supported by evidence in the record because Plaintiff's

"gait was normal in May and August 2018.  He again reported being very active in the

gym ([T. 927, 1074, 1082, 1093].).  (T. 26.)  To be sure, the ALJ provided the specific

citations to the record after his statement of gym activity.  However, the citations support

the ALJ's consideration of records containing notations of normal gait in 2018 as well as

gym activity.  Therefore, the ALJ's citations supported his statement that Plaintiff had

normal gait and reported gym activity.

    The ALJ properly noted Plaintiff's gait was observed to be normal in May 2018

(T. 927) and August 2018 (T. 1074).  The ALJ further properly cited treatment notations

stating Plaintiff was not currently having knee pain, was "very active in the gym doing

hamstring exercises" and wanted to work on his flexion range of motion in his knee.  (T.

1082.)  Lastly, the ALJ properly cited evidence that Plaintiff "tweaked" his knee while

exercising.  (T. 1093.)  Therefore, the ALJ properly cited evidence in the record to

support his assertion that Plaintiff had a normal gait and he was active at a gym.

Plaintiff argues the ALJ "over-emphasized" his drinking and the ALJ "repeatedly cited alcohol use in an apparent effort to discount the severity of [Plaintiff's] symptoms." (Dkt. No. 18 at 31-32.)  Plaintiff further argues the ALJ found alcohol use disorder to be a severe impairment at step two but failed to evaluate whether the alcohol use was material to the claim under the rubric of SSR 13-2p's six-step evaluative process.  (*Id.* at 32.)  A review of the record and the ALJ's decision fails to support Plaintiff's assertion that the ALJ "over-emphasized" his drinking.  In his overall assessment of Plaintiff's mental impairments, the ALJ considered Plaintiff's reported daily alcohol use and admission to a provider he drank too much.  (T. 27.)  The ALJ also considered Plaintiff's history of suicidal ideation, objective mental status examinations, prescribed medications, and Plaintiff's reports to providers regarding his mental health status and activities.  (T. 27-28.)  Therefore, there is no indication from the ALJ's decision that he over emphasize Plaintiff's alcohol use.

Plaintiff's argument, that the ALJ failed to properly assess Plaintiff's substance abuse under SSR 13-2p, fails.  (Dkt. No. 18 at 32.)  In general, if a plaintiff has drug addiction and alcoholism ("DAA") and if plaintiff is disabled considering all of his or her impairments, including the DAA, then the ALJ is required to perform addition analysis.  *See* SSR 13-2p.  However, if the plaintiff has a DAA and the ALJ determines plaintiff is not disabled considering all of plaintiff's impairments, then the analysis concerning DAA materiality ends.  *Id*.

Here, the ALJ determined at step two Plaintiff had a severe impairment of alcohol use; however, the ALJ ultimately determined Plaintiff was not disabled considering all of his impairments.  Because the ALJ's determination that Plaintiff was not disabled was

proper and supported by substantial evidence, the ALJ did not err in failing to determine DAA materiality.

Overall, the ALJ properly assessed Plaintiff's subjective complaints, including pain, and substantial evidence supported the ALJ's determination.

### C.    Traumatic Brain Injury

Plaintiff argues the ALJ erred in finding Plaintiff's traumatic brain injury ("TBI") non-severe and further failed to sufficiently provide limitations in the RFC based on this impairment.  (Dkt. No. 18 at 31.)  The ALJ properly determined Plaintiff's TBI non-severe and substantial evidence supported his determination.  Further, Plaintiff fails to meet his burden to establish severity.

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c). The plaintiff bears the burden of presenting evidence establishing severity.  *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 276 (W.D.N.Y. 2018) (quoting *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)); *see also* 20 C.F.R. § 404.1512(a). In support of his assertion that TBI was a severe impairment, Plaintiff cites to Dr. Reynolds examination arguing his condition was worsening.  (Dkt. No. 18 at 31.) However, when asked if Plaintiff was diagnosed with a TBI, Dr. Reynolds answered "no."  (T. 326.)  Dr. Reynolds indicated Plaintiff's depressive disorder and alcohol use disorder worsened.  (T. 326.)  Consistent with this evidence, the ALJ determined at step two Plaintiff had the severe impairments of depressive disorder and alcohol use disorder.  (T. 20.)  Therefore, the ALJ did not err in concluding Plaintiff's TBI was a non-

severe impairment and Plaintiff fails to provide evidence in the record he was diagnosed with TBI or had additional functional limitations due to his TBI.

The ALJ has the duty to evaluate conflicts in the evidence.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

ORDERED that Defendant's unfavorable determination is **<u>AFFIRMED</u>**; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:          August 5, 2021

_____
William B. Mitchell Carter
U.S. Magistrate Judge